Douglas P. Farr (13208)
Ben T. Welch (13397)
Annika L. Jones (16483)
SNELL & WILMER L.L.P.
15 West South Temple
Salt Lake City, Utah 84101
Telephone:  801.257.1900
Facsimile:  801.257.1800
Email: dfarr@swlaw.com
        bwelch@swlaw.com
        aljones@swlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NANCY BOLDT, an individual; and CANARY GARDEN, INC., a domestic non-profit corporation, | Civil No. 2:20-cv-00817-TC |
| Plaintiffs, | **COMPLAINT** |
| vs. | JURY DEMANDED |
| AMERICAN FORK CITY, a political subdivision of the state of Utah; AMERICAN FORK POLICE DEPARTMENT, a subdivision of the state of Utah; OFFICER JAY M CHRISTENSEN, an officer of the American Fork Police Department, in both his individual and official capacities, | Judge Tena Campbell |
| Defendants. | |

Plaintiffs NANCY BOLDT ("Ms. Boldt") and CANARY GARDEN, INC. ("Canary

Garden") (together, "Plaintiffs"), through their undersigned counsel, hereby submit their

Complaint and complaint of the Defendants AMERICAN FORK CITY, a political subdivision of

the state of Utah (the "City"); AMERICAN FORK POLICE DEPARTMENT (the "Police

4833-2514-7858.5

Department"), a subdivision of the State of Utah; and OFFICER JAY M. CHRISTENSEN, an officer of the American Fork Police Department ("Officer Christensen") (collectively "Defendants") as follows:

## PARTIES

1. Plaintiff Nancy Boldt is an individual residing in Pleasant Grove, Utah and at all times relevant to this case was a resident of the state of Utah.

2. Plaintiff Canary Garden is a nonprofit organization registered in Utah.

3. Defendant American Fork City is and at all time relevant to this case was a political subdivision of the state of Utah.

4. Defendant American Fork Police Department is and at all times relevant to this case was a subdivision of the state of Utah.

5. Officer Jay M. Christensen, upon information and belief who is also known as Jay Christensen, is a resident of Lehi, Utah, and at all time relevant to this case was an officer of the American Fork Police Department.

## JURISDICTION & VENUE

6. The Court has jurisdiction of this action under 42 U.S.C. § 1983, as the Defendants acted under color of state law, and caused Plaintiffs, as citizen of the United States to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this case is a civil action arising under the Constitution of the United States, as permitted through 42 U.S.C. § 1983 and the application of the United States Constitution to the States and their subdivisions through the Fourteenth Amendment to the United States Constitution.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all Defendants reside in the District of Utah and a substantial part of the events or omissions giving rise to Plaintiffs claims in the Complaint occurred in the District of Utah.

## GENERAL ALLEGATIONS
### *Background*

9.      In or about March 2003, Canary Garden was established in Orem, Utah.

10.     In or about July 2003, the Internal Revenue Service ("IRS") approved Canary Garden as a non-profit corporation exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.

11.     By letter dated January 19, 2008, the IRS reaffirmed that Canary Garden was a non-profit corporation and stated that Canary Garden "continue[s] to be classified as an organization exempt from federal income tax under section 501(c)(3) of the Code."

12.     Canary Garden facilitates peer-to-peer grief support to families whose family members have died.

13.     Canary Garden's peer-to-peer grief support is moderated by a group leader who lectures and instructs the support groups.

14.     In the Fall of 2013, Ms. Boldt became Canary Garden's executive director and suggested moving Canary Garden to American Fork, Utah.

15.     Ms. Boldt became involved with Canary Garden after she had two sons—both with Down Syndrome—die from cancer within one year of each other.

16.     In early 2016, Ms. Boldt discussed moving Canary Garden with Audra Sorensen, Director of Public Relations & Economic Development with the City, and asked for suggestions for housing Canary Garden.

17.     In or about July 2016, Canary Garden leased a home at 43 North 100 East American Fork, Utah, and Canary Garden moved its operations to that location (the "Property").

18. The Property is located on the same City block as the Police Department and other City offices.

19. Canary Garden named the Property "Joshy's House of Hope" after Ms. Boldt's son, Josh Boldt, who died from cancer in 2008.

20. In or about July 2016, Canary Garden approached the City to establish utilities for Joshy's House of Hope.

21. A City employee arranged for Dan Rojas ("Mr. Rojas"), American Fork's Chief Building Official, and a fire inspector, to inspect the Property.

22. Mr. Rojas and the fire inspector inspected Joshy's House of Hope and determined it was not compliant with the Americans with Disabilities Act ("ADA").

23. Mr. Rojas referred Ms. Boldt to a former fire marshal, who could assist her in making Joshy's House of Hope compliant with the ADA. The former fire marshal told Ms. Boldt that to be ADA compliant a door needed to be widened, a wheelchair ramp needed installed, and two fire exterior escapes needed installed on the second floor.

24. The former fire marshal also told Ms. Boldt that because of the house's historic nature, American Fork's Historical Society would not allow the requisite modifications.

25. Shortly thereafter, Ms. Boldt learned that the building had previously been zoned for both residential and non-residential purposes.

26. Because Joshy's House of Hope had previously been zoned for non-residential purposes prior to the ADA, it could be grandfathered without meeting current ADA requirements.

27. Based on this new information, the former fire marshal told Ms. Boldt that the fire codes in force at the time the non-residential zoning was issued required installation of several fire extinguishers and two rope fire-ladders for the two upstairs rooms.

28.     Following this instruction, Ms. Boldt installed the requisite fire extinguishers and ladders.

29.     Having complied with the instructions provided by the former fire marshal, a representative of the City, Canary Garden began holding peer support lectures at Joshy's House of Hope in or about September 2016.

30.     From September 2016 through September 2018, Canary Garden held peer support lectures and provided support to grieving families.

31.     For over two years, Canary Garden facilitated peer-to-peer grief support at Joshy's House of Hope just one tenth of a mile from the Police Department and American Fork City Hall.

32.     Canary Garden's operations were open and obvious to the City.

33.     In fact, there were banners and signs at the Property identifying it as Joshy's House of Hope.

### *Officer Christensen Confronts and Intimidates the Boldt Family.*

34.     On or about Friday, September 21, 2018, Aaron Boldt ("Aaron"), Ms. Boldt's son, was approached by Officer Christensen outside Joshy's House of Hope.

35.     Aaron was doing yard work in advance of an upcoming fundraiser for Canary Garden.

36.     Officer Christensen asked Aaron about Canary Garden's future plans.

37.     Aaron told Officer Christensen about Canary Garden and also explained that Canary Garden wanted to add an LGBTQ+ support group and suicide prevention training.

38.     Despite being equipped with a body camera, the City claims it has no footage of this interaction with Aaron.

39. The next day, on Saturday, September 22, 2018, Ms. Boldt and Aaron were outside Joshy's House of Hope when a Police Department vehicle creeped by the Property and then sped off after seeing Aaron and Ms. Boldt.

40. Aaron identified the driver of the vehicle as Officer Christensen, who had spoken to Aaron the day before.

41. Two days later, on September 24, 2018, Officer Christensen called Ms. Boldt and asked her why Canary Garden did not have a business license from the City.

42. Ms. Boldt told Officer Christensen that Canary Garden did not need a business license because it was a 501(c)(3) organization.

43. Ms. Boldt again explained the non-profit services offered by Canary Garden.

44. Toward the end of the call, Officer Christensen said that he better understood what Canary Garden did and would review whether a City business license would be required.

45. Approximately one hour after the phone conversation, Officer Christensen called Ms. Boldt again and left her a voicemail.

46. In the voicemail, Officer Christensen instructed Canary Garden to cease and desist holding meetings at Joshy's House of Hope.

47. Following Officer Christensen's voicemail and in particular his threats regarding the lack of a business license, Canary Garden ceased all support group meetings at the Property.

48. As a result, Canary Garden was unable to raise money or provide valuable services to the community.

49. In fact, Canary Garden missed out on many valuable grants and lost valuable corporate partners, all of which were directly caused by Defendants' actions to prevent Canary Garden from providing services to the community.

50. Although Canary Garden operated peacefully and without interruption for more than two years, it was only after Officer Christensen learned that Canary Garden planned to

provide additional services to the LGBTQ+ community that Canary Garden came under heightened scrutiny, and eventually harassment, by Defendants.

51.    For example, on October 8, 2018, Officer Christensen showed up at the home of Ms. Boldt's daughter, Natalie, a resident of the City.

52.    Natalie was in the yard playing with her young children when Officer Christensen arrived.

53.    Officer Christensen approached Natalie with his hand on his gun and asked where he could find Ms. Boldt.

54.    This experience left Natalie and her minor children intimidated and terrified.

55.    Officer Christensen approached Natalie with the purpose of intimidating the Boldt family.

56.    Officer Christensen already had Ms. Boldt's phone number and therefore had no reason to harass her daughter and grandchildren. Indeed, prior to confronting Natalie, Officer Christensen made no attempt to locate Ms. Boldt telephonically, confirming that this interaction was merely a pretext for causing further intimidation to Ms. Boldt and Canary Garden.

57.    Once again, despite being equipped with a body camera, the City claims it has no footage of this interaction with Natalie.

### Officer Christensen Cites Ms. Boldt for Operating a Business Without a License despite Ms. Boldt's Compliance with the City's Requests.

58.    One day after confronting Natalie, Officer Christensen called Ms. Boldt, again confirming that he had her phone number and there was no need to torment and intimidate Natalie in order to arrange a meeting with Ms. Boldt.

59.    Ms. Boldt agreed to meet Officer Christensen at the Property.

60.    On October 9, 2018, Ms. Boldt met Officer Christensen in the parking lot adjacent to Joshy's House of Hope.

61.    Officer Christensen's body camera footage only captured 7 minutes and 17 seconds of the approximately 45 minutes of this interaction.

62.    The body camera footage began with Officer Christensen confronting Ms. Boldt about operating Canary Garden without a business license.

63.    Ms. Boldt calmly explained to Officer Christensen that everyone she interacted with at the City told her that Canary Garden could operate without a business license.

64.    Officer Christensen ignored Ms. Boldt and told her that "you didn't get a license," "you can't ignore City ordinances though," and "you never shoulda had your meetings."

65.    Ms. Boldt responded, "I had all the licenses we needed, I thought.  The fire marshal said if you follow this, and I went to the City and they told me if you do this, you can still run.  We only meet here once or twice a week."

66.    Officer Christensen argued, "It's still meeting.  Ok. I'm not going to fight with ya. I'm not going to argue with ya.  I'm going to give ya a citation and if you don't agree with it you can go to the judge.  That way I'm out of it.  The City's out of it. And you can go to the Judge and say this is the way it is.  Tell him what you just told me.  Tell the Judge that.  I'm not out to get anybody.  I'm enforcing the City code."

67.    Ms. Boldt asked Officer Christensen, "Why is this [happening] now and not a year ago?"

68.    Officer Christensen untruthfully said, "Because I didn't know about it a year ago."

69.    Ms. Boldt responded, "The whole county knows.  We've been on T.V. We've been in the newspaper.  The whole City has bragged about us. They've had articles posted on the American Fork website."

70.    Officer Christensen then said, "I got my running orders from Cheryl Lynn our city prosecutor.  At the time that I brought you a fix-it notice and dropped it off."

71. "A fix-it notice?" Ms. Boldt responded, "I never got a fix-it notice. I've never been given a fix-it notice. Ever."

72. Confronted with his lie, Officer Christensen said, "Uhh, How did you? You're just going by my conversation on the phone?"

73. Ms. Boldt said, "Yes."

74. Again, Officer Christensen fumbled, "Uhh. I should have given you a fix-it notice for fourteen days. But you had already been in business longer than fourteen days so I doubt you woulda fixed it."

75. Ms. Boldt responded, "I never got a fix-it notice. I don't even know what that is."

76. Officer Christensen continued, "It doesn't matter anyways. Uh. You're still in violation. That's the whole thing. Do you have a current license or driver's license because I went up to your old one?"

77. Ms. Boldt said, "No. That was my daughter's house."

78. Officer Christensen responded, "Right."

79. At that point, Ms. Boldt opened her car door to grab her driver's license and Officer Christensen turned off his body camera so that the remainder of their interaction was not recorded.

80. Among other things, after turning off his body camera, Officer Christensen told Ms. Boldt that she was facing a year in jail for operating a business without a license.

81. Ms. Boldt was terrified that she was going to be thrown in jail based upon the City's misunderstanding.

82. He also told Ms. Boldt that the City wanted to run Canary Garden's landlord, Mark Wilson ("Mr. Wilson"), out of town, and that the City previously harassed Mr. Wilson about a trailer park he owned until he sold the trailer park to the City.

83.     Upon information and belief, the City Council had discussed purchasing the Property leased by Canary Garden to use as a parking lot, but Mr. Wilson refused to sell.

84.     Despite Ms. Boldt's compliance with Officer Christensen's cease and desist order, Ms. Boldt was cited by Officer Christensen with a class "B" misdemeanor for operating a business without a license.

85.     Upon information and belief, Officer Christensen's conduct was motivated by and/or condoned by municipal policy or a practice of selective and/or malicious enforcement of the City's municipal ordinances.

### American Fork Maliciously Prosecutes Ms. Boldt.

86.     On October 10, 2018, Officer Christensen filed a false incident report that stated he told Ms. Boldt "a few months ago to cease and desist from doing any more business."

87.     Officer Christensen's report was false because it had only been just over two weeks since Officer Christensen told Ms. Boldt to cease and desist doing business.

88.     Based upon Officer Christensen's report, the City filed a Criminal Information against Ms. Boldt in the Fourth District Court of Utah for Operating a Business without a business license, a class "B" misdemeanor in violation of American Fork Municipal Code § 5.04.020.

89.     Pursuant to City Municipal Code ("Municipal Code") § 5.04.020:

    A.     It is unlawful for any person to engage in business in the city without first procuring the required license therefor.
    B.     Every person engaged in business in the city shall secure a business license from the city for such business. A separate license must be obtained for each separate business and each separate place of business maintained within the city. A business license shall be obtained by making written application for the license in the manner prescribed by the city, paying the fee required by this chapter, and satisfying all prerequisites for the issuance of the license.

90.     However, Municipal Code § 5.04.040 states that:

> No license fee or permit shall be required under the terms of this chapter for the conducting of lectures, entertainments, concerts, fairs, exhibitions, bazaars, luncheons, dinners or dances which are conducted, given or made-by or for governmental entities or tax-exempt charitable organizations-wholly for benevolent or charitable purposes. With respect to exemptions from business license requirements claimed hereunder, it shall be the burden of the person or entity claiming the exemption to establish that exemption.

91. Canary Garden's entire operation at Joshy's House of Hope was limited to support group meetings, volunteer trainings, and lectures to provide grief support, and it intended to add LGBTQ+ support and suicide prevention training services.

92. Canary Garden is a tax-exempt charitable organization-wholly for benevolent or charitable purposes.

93. Based on the Municipal Code's plain language, Canary Garden did not need a business permit or license to operate.

94. Despite the plain language of the Municipal Code, Officer Christensen maliciously and wrongfully cited Ms. Boldt for operating a business without a license.

95. Therefore, the criminal proceeding against Ms. Boldt was initiated without probable cause.

96. The criminal citation was issued for the purpose of harassment, discrimination, and to harm Canary Garden, not because of any violation of the Municipal Code.

97. On November 2, 2018, the law firm of Snell & Wilmer L.L.P. ("S&W") entered an appearance to defend Ms. Boldt and requested that all future communications regarding Ms. Boldt's criminal charge be directed to S&W.

98. Throughout trial preparations, the City prosecutors employed a series of games, manipulations, and delay tactics to prejudice Ms. Boldt's defense such as:
   a. Responding to Ms. Boldt's discovery requests with general denials instead of particularized responses.
   b. Promising to produce Officer Christensen's body camera footage and refusing to produce the footage for over one month.

c. Reducing Ms. Boldt's charges from a misdemeanor to an infraction to deprive her of her right to a trial by jury.

d. Misquoting the Municipal Code to prohibit Ms. Boldt from carrying on Canary Garden's charitable operations.

99.    Notwithstanding Ms. Boldt's request that all communications be directed to her counsel of record, Officer Christensen continued to contact, harass, and intimidate Ms. Boldt directly during the pendency of the criminal case against Ms. Boldt.

100.    For example, on or about December 10, 2018, at approximately 10:30 a.m., Officer Christensen left Ms. Boldt a voicemail asking about the status of her case and if she had been to court yet.

101.    This voicemail left Ms. Boldt feeling terrified.

102.    Ms. Boldt feared that she would be retaliated against if she did not respond to Officer Christensen's official inquiry.

103.    Ms. Boldt returned Officer Christensen's call, and he began peppering her with questions about her criminal case.

104.    After enduring these questions, Ms. Boldt informed Officer Christensen that he would need to talk to her attorney if he had any further questions.

105.    Officer Christensen snapped, "Never mind, I'll talk to the prosecutor!" Then he abruptly hung up.

106.    Thereafter, on or about December 14, 2018, Ms. Boldt and others were at Joshy's House of Hope making sure the Property was maintained while no services were being held.

107.    At some point, an individual at the Property noticed Officer Christensen parked on the street outside Joshy's House of Hope in his police car watching them.

108.    When the group stepped towards the window, Officer Christensen quickly started his car and furtively drove away.

109.    Approximately four days later, on or about December 18, 2018, Ms. Boldt again observed Officer Christensen parked outside Joshy's House of Hope.  He again sped away as soon as he was spotted.

110.    Throughout Ms. Boldt's prosecution, Ms. Boldt was harassed and threatened by Officer Christensen's intimidating behavior.

111.    Ms. Boldt has suffered anxiety and depression stemming from Officer Christensen's intimidating behavior.

### *The City Dismisses Charges Against Ms. Boldt But Will Not Allow Her to Operate Canary Garden.*

112.    Shortly after these events, Ms. Boldt informed her counsel about Officer Christensen's phone call and visits to Joshy's House of Hope.

113.    On January 23, 2019, S&W sent the City prosecutor a letter via email highlighting Officer Christensen's improper contact with Ms. Boldt.

114.    S&W demanded that "Officer Christensen's threatening behavior … cease immediately."

115.    S&W renewed its request that the "Police Department, including Officer Christensen,… not contact Ms. Boldt for any reason related to this matter" and warned that "[i]f Officer Christensen contacts Ms. Boldt again, [S&W] will have no choice but to seek intervention by the Court for, among other things, attempted tampering with a witness … or for official misconduct."

116.    Two days later, on January 25, 2019, the City prosecutor filed a motion to dismiss the charges against Ms. Boldt on the basis that "the Defendant is no longer operating a business without a license in American Fork City."

117.    On January 25, 2019, the Honorable Roger W. Griffin dismissed the charges against Ms. Boldt with prejudice.

118. The City's motion to dismiss was intentionally misleading because Ms. Boldt had not been operating a business without a license since Officer Christensen orally told Ms. Boldt to cease and desist all business operations on September 24, 2018.

119. During all relevant times, Canary Garden desired to operate at Joshy's House of Hope to provide services to the community, including the LGBTQ+ community, but has been prevented from doing so because of the City's unlawful and harmful actions, including the malicious prosecution of the baseless criminal action against Ms. Boldt and refusing to follow its own laws.

120. On January 30, 2019, Mr. Boldt's husband, Lance Boldt ("Mr. Boldt"), spoke with Angela Katoa ("Ms. Katoa"), American Fork's business licensing supervisor and informed Ms. Katoa that Canary Garden was a charitable organization that was exempt from the City's licensing/permitting requirements.

121. Ms. Katoa, after conferring with the City attorney, informed Mr. Boldt that Canary Garden needed a business license to operate.

122. On March 14, 2019, S&W sent the City a letter demanding that the City "authorize Canary Garden to resume its normal operations in accordance with Municipal Code."

123. On April 4, 2019, the City's attorneys responded and denied Canary Garden's request, and even misquoted Municipal Code § 5.04.040 to materially change and limit the business license exemption for non-profits businesses.

124. S&W and the City's attorneys had a telephonic conference to discuss the City's denial of Canary Garden's request to renew its charitable services.

125. The City refused to reconsider its denial, but the City made the pretextual argument that its real concern was about building safety.

126. Despite its argument, the City could not explain why it criminally charged Ms. Boldt for operating without a business license if the real concern was building safety.

127. The City never issued a notice to Canary Garden or Ms. Boldt about the safety of the Property.

128. The City never offered Canary Garden the opportunity to rectify any concerns the City may have had about the Property.

129. In fact, the City has never even informed Canary Garden or Ms. Boldt about any specific concerns the City may have about the Property.

130. On the contrary, the City's claims about its concerns for building safety directly contradict its own findings in 2016 when Dan Rojas, the City's Chief Building Inspector and a fire marshal, examined the Property and found that, other than minor adjustments to comply with the ADA, the Property was acceptable.

131. As such, the City's claims again are nothing more than a pretext for continued harassment and an attempt of historical revisionism to falsely justify why it began harassing Canary Garden and Ms. Boldt only after it learned that they intended to provide support services to the LGBTQ+ community.

132. From the time Officer Christensen first ordered Ms. Boldt to cease and desist Canary Garden's operations on September 24, 2018 through the present, Canary Garden has not allowed to operate.

133. From the time Canary Garden was forced to cease operations, it has been unable to provide grief support to the community, lost the opportunity to apply for valuable grants, and been deprived of its use of Joshy's House of Hope.

134. Canary Garden has been devastated financially.

135. Defendants' actions, including the pretextual criminal charge against Ms. Boldt and pretextual refusal to authorize Canary Garden to resume its normal operations, have wrongfully and unreasonably interfered with Ms. Boldt and/or Canary Garden's possessory interest in and use of Joshy's House of Hope.

4833-2514-7858.5

136.   Upon information and belief, the Defendants' conduct was motivated by and/or condoned by municipal policy or a practice of selective and/or malicious enforcement of the City's municipal ordinances.

### *Ms. Boldt is Sued as a Result of the City's Malicious Prosecution*

137.   Despite being unable to operate and otherwise raise funding, Canary Garden remained obligated to make lease payments to Mr. Wilson.

138.   Based on the City's actions and its continued refusal to permit Canary Garden to operate, Canary Garden was not able to pay its lease obligations.

139.   On October 15, 2019, Mr. Wilson filed suit against Ms. Boldt, seeking to recover the unpaid rent payments from her personally, in a lawsuit styled as *LeAnn and Mark Wilson v. Nancy Boldt*, Civ. No. 190401608 in the Fourth Judicial District in and for Utah County.

140.   On September 1, 2020, and after the Fourth Judicial District Court found that Ms. Boldt was personally responsible for the lease payments, the district court entered judgment against Ms. Boldt in the amount of $60,000.

141.   Ms. Boldt has also been devastated financially and has suffered extreme amounts of anxiety and emotional distress, all as a result of the City's onslaught against her and Canary Garden.

142.   Existing remedies do not redress Plaintiffs' injuries.

143.   Because Canary Garden has been forced to cease operations and because a judgment has been entered against Boldt personally for unpaid rent, equitable relief is wholly inadequate to protect Plaintiffs' rights or redress their injuries.

144.   The conduct alleged herein constituted flagrant violations of Plaintiffs' well-established constitutional rights, of which reasonable persons would have known.

## FIRST CAUSE OF ACTION

(*Malicious Prosecution under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution - against the City, the Police Department, and Officer Christensen*)

145.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

146.    Officer Christensen, acting as an agent of the City and the Police Department, and under color of state law, cited Ms. Boldt for operating a business without a license, thus commencing a criminal proceeding against Ms. Boldt.

147.    Ms. Boldt was seized when she was cited because she was under constant police surveillance and had set court dates she had to comply with.

148.    The charge against Ms. Boldt was dismissed resulting in a termination of the action in her favor.

149.    The criminal proceeding and citation of Ms. Boldt was initiated maliciously because (i) Canary Garden complied with all the City's requirements; (ii) the plain language of the Municipal Ordinance authorized Canary Garden to proceed without a permit; (iii) the City told Ms. Boldt she could operate; and (iv) Ms. Boldt immediately ceased Canary Garden's operations at the City's request.

150.    Upon information and belief, Ms. Boldt was maliciously prosecuted because the City and/or Officer Christensen sought to prevent Canary Garden from adding LGBTQ+ support services.

151.    Upon information and belief, Ms. Boldt was maliciously prosecuted because the City and/or Officer Christensen wanted to harass or intimidate Mr. Wilson into selling the Property to the City.

152.    As a result of Defendants' actions, Ms. Boldt has suffered extreme anxiety and depression.

153.    As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

154.    Ms. Boldt is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

(*Retaliatory Prosecution under 42 U.S.C. § 1983, the First and Fourteenth Amendments of the United States Constitution - against the City, the Police Department, and Officer Christensen*)

155.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

156.    Ms. Boldt intended to engage in the constitutionally protected activity of associating with the LGBTQ+ community and providing LGBTQ+ support services and suicide prevention training.

157.    Upon information and belief, the Defendants' alleged they were prosecuting Ms. Boldt for operating a business without a license when, in fact, Defendants were prosecuting Ms. Boldt because of her affiliation with and plan to offer support services to the LGBTQ+ community.

158.    The Defendants attempted to prosecute Ms. Boldt without probable cause, which is evidenced by Defendants' actions during the criminal action, including reducing the charge from a misdemeanor to an infraction to remove Ms. Boldt's right to a jury and dismissing the case with prejudice upon learning of Officer Christensen's misconduct.

159.    The Defendants intimidated and harassed Ms. Boldt to prevent her from holding future LGBTQ+ group meetings.

4833-2514-7858.5

160. The Defendants' intimidation and threats only began after they learned of Ms. Boldt's intent to hold LGBTQ+ support groups.

161. Based upon Defendants' intimidation, harassment, and threats, a person of ordinary firmness would cease holding group meetings in the City.

162. As a result of Defendants' actions, Ms. Boldt has suffered severe anxiety and depression.

163. As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

164. Ms. Boldt is also entitled to attorney's fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION

(*Malicious Prosecution under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution's Equal Protection Clause - against the City, the Police Department, and Officer Christensen*)

165. Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

166. Officer Christensen, acting as an agent of the City and the Police Department, and under color of state law, cited Ms. Boldt for operating a business without a license, thus commencing a criminal proceeding against her.

167. The criminal proceeding and citation issued against Ms. Boldt was initiated maliciously because (i) Canary Garden complied with all the City's requirements; (ii) the plain language of the Municipal Ordinance authorized Canary Garden to proceed without a permit; and (iii) Ms. Boldt ceased Canary Garden's operations at the City's request.

168.  Ms. Boldt was maliciously prosecuted because the City sought to prevent Canary Garden from adding LGBTQ+ support services and suicide prevention training.

169.  Ms. Boldt was denied equal protection of law because she affiliated with members of the LGBTQ+ community.

170.  As a result of Defendants' actions, Ms. Boldt has suffered severe anxiety and depression.

171.  As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

172.  Ms. Boldt is also entitled to attorney fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION
(*Unreasonable Seizure under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution—against the City, the Police Department, and Officer Christensen*)

173.  Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

174.  At all relevant times, Ms. Boldt and/or Canary Garden was a lessee of and had a possessory interest in the Property.

175.  Through the conduct alleged herein, Defendants unreasonably deprived Plaintiffs of the use and enjoyment of the Property, including their interest in using the Property as the location for Canary Garden's services.

176.  As a result of Defendants' actions, Canary Garden was unable to maintain normal operations and was devastated financially

177.    As a result of Defendants' actions, Ms. Boldt has suffered severe anxiety and depression.

178.    As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

179.    Ms. Boldt is also entitled to attorney fees, costs and expert witness fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**FIFTH CAUSE OF ACTION**
(*Violations of 42 U.S.C. § 1983 and the Due Process Clause of the U.S. Constitution against the City, the Police Department, and Officer Christensen*)

180.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

181.    At all relevant times, Ms. Boldt and/or Canary Garden was a lessee of and had a possessory interest in the Property.

182.    Through the conduct alleged herein, Defendants deprived Plaintiffs of their rights in the Property, without due process of law.

**SIXTH CAUSE OF ACTION**
(*Violations of 42 U.S.C. § 1983 and the Equal Protection Clause of the U.S. Constitution against the City, the Police Department, and Officer Christensen*)

183.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

184.    Through the conduct alleged herein, Defendants intentionally treated Plaintiffs differently from others similarly situated due to improper animus against Ms. Boldt and Canary Garden.

185.    Upon information and belief, other similarly situated nonprofit organizations in the City have not been instructed or ordered to cease operations, nor have their principals been

4833-2514-7858.5

criminally prosecuted for failing to maintain a business license despite being exempt from that requirement.

186.    There is no rational basis or legitimate justification for Defendants' differential treatment of Ms. Boldt and Canary Garden.

187.    Rather, Defendants treated Ms. Boldt and Canary Gardens differently due to improper personal animus and/or the improper motive of preventing Ms. Boldt and Canary Garden from serving the LGBTQ+ community.

## SEVENTH CAUSE OF ACTION
*(Malicious Prosecution under the Utah Constitution—*
*against the City, the Police Department, and Officer Christensen)*

188.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

189.    Officer Christensen, acting as an agent of the City and the Police Department, and under color of state law, cited Ms. Boldt for operating a business without a license, thus commencing a criminal proceeding against her.

190.    Ms. Boldt was effectively seized when she was cited because she was under constant police surveillance and had set court dates she had to comply with.

191.    The charge against Ms. Boldt was dismissed resulting in a termination of the action in her favor.

192.    The criminal proceeding and citation of Ms. Boldt was initiated maliciously because (i) Canary Garden complied with all the City's requirements; (ii) the plain language of the Municipal Ordinance authorized Canary Garden to proceed without a permit; (iii) the City told Ms. Boldt she could operate; and (iv) Ms. Boldt immediately ceased Canary Garden's operations at the City's request.

193.    Upon information and belief, Ms. Boldt was maliciously prosecuted because the City and/or Officer Christensen sought to prevent Canary Garden from adding LGBTQ+ support services and suicide prevention training.

194.    Upon information and belief, Ms. Boldt was maliciously prosecuted because the City and/or Officer Christensen wanted to harass or intimidate Mr. Wilson into selling the Property to the City.

195.    As a result of Defendants' actions, Ms. Boldt has suffered extreme anxiety and depression.

196.    As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
(*Retaliatory Prosecution under the Utah Constitution —
against the City, the Police Department, and Officer Christensen*)

197.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

198.    Ms. Boldt intended to engage in the constitutionally protected activity of associating with the LGBTQ+ community and providing LGBTQ+ support services and suicide prevention training.

199.    Upon information and belief, the Defendants alleged they were prosecuting Ms. Boldt for operating a business without a license when, in fact, Defendants were prosecuting Ms. Boldt because of her affiliation with the LGBTQ+ community.

200.    The Defendants attempted to prosecute Ms. Boldt without probable cause, which is evidenced by Defendants' actions during the criminal action, including reducing the charge

from a misdemeanor to an infraction to remove Ms. Boldt's right to a jury and dismissing the case with prejudice upon learning of Officer Christensen's misconduct.

201.    The Defendants intimidated and harassed Ms. Boldt to prevent her from holding future LGBTQ+ group meetings.

202.    The Defendants' intimidation and threats only began after they learned of Ms. Boldt's intent to hold LGBTQ+ support groups.

203.    Based upon Defendants' intimidation, harassment, and threats, a person of ordinary firmness would cease holding group meetings in the City.

204.    As a result of Defendants' actions, Ms. Boldt has suffered severe anxiety and depression.

205.    As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
*(Unreasonable Seizure under the Utah Constitution—*
*against the City, the Police Department, and Officer Christensen)*

206.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

207.    At all relevant times, Ms. Boldt and/or Canary Garden was a lessee of and had a possessory interest in the Property.

208.    Through the conduct alleged herein, Defendants unreasonably deprived Ms. Boldt and/or Canary Garden of the use and enjoyment of the Property, including their interest in using the Property as the location for Canary Garden's services.

209.    As a result of Defendants' actions, Canary Garden was unable to maintain normal operations and was devastated financially

4833-2514-7858.5

210.    As a result of Defendants' actions, Ms. Boldt has suffered severe anxiety and depression.

211.    As a result of Defendants' actions, Ms. Boldt was damaged in an amount no less than $60,000, representing amounts owed to lease the Property, which she was unable to pay due to Defendants' wrongful conduct, as well as additional general, compensatory, actual, and punitive damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
(*Violations of the Due Process Clause of the Utah Constitution against the City, the Police Department, and Officer Christensen*)

212.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

213.    At all relevant times, Ms. Boldt and/or Canary Garden was a lessee of and had a possessory interest in the Property.

214.    Through the conduct alleged herein, Defendants deprived Plaintiffs of their rights in the Property without due process of law.

## ELEVENTH CAUSE OF ACTION
(*Violations of the Article I section 24 of the Utah Constitution against the City, the Police Department, and Officer Christensen*)

215.    Plaintiffs hereby incorporate and re-allege all paragraphs above and below as though fully set forth herein.

216.    Through the conduct alleged herein, Defendants intentionally treated Plaintiffs differently from others similarly situated due to improper animus against Ms. Boldt and Canary Garden.

217.    Upon information and belief, other similarly situated nonprofit organizations in the City have not been instructed or ordered to cease conducting business, nor have their principals been criminally prosecuted for failing to maintain a business license despite being exempt from that requirement.

218.     There is no rational basis or legitimate justification for Defendants' differential treatment of Plaintiffs.

219.     Rather, Defendants treated Plaintiffs differently due to improper personal animus and/or the improper motive of preventing Ms. Boldt and Canary Garden from serving the LGBTQ+ community.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1.     For an award of general, compensatory, actual, consequential and punitive damages in an amount of no less than $60,000.00;

2.     For an award of attorney fees, expert fees and costs of suit pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, Rule 54 of the Federal Rules of Civil Procedure, and any other applicable rules or statutes;

3.     For punitive damages based on Defendants' intentional misconduct; and

4.     For such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this matter on all triable issues.

DATED this 19th day of November, 2020.

SNELL & WILMER L.L.P.


*/s/ Douglas P. Farr*____
Douglas P. Farr
Ben T. Welch
Annika L. Jones

*Attorneys for Plaintiffs*