IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NANCY BOLDT, an individual; and CANARY GARDEN, INC., a domestic non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN FORK CITY, a political subdivision of the state of Utah; AMERICAN FORK POLICE DEPARTMENT, a subdivision of the state of Utah; OFFICER JAY M. CHRISTENSEN, an officer of the American Fork Police Department, in both his individual and official capacities,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:20-cv-817-TC-DAO |

In this civil rights case, Plaintiffs Nancy Boldt and Canary Garden, Inc. bring federal and state constitutional claims against Defendants American Fork City, American Fork Police Department, and American Fork police officer Jay Christensen. According to Plaintiffs, Defendants targeted them after Plaintiffs told Officer Christensen they were preparing to provide group counseling services to members of the LGBTQ+ community. They point to Officer Christensen's cease-and-desist order as well as his criminal citation of Ms. Boldt for alleged violation of a municipal ordinance. They also point to the City's prosecution of Ms. Boldt,

which the City later dropped. These actions, maintain Plaintiffs, violated their First, Fourth, and Fourteenth Amendment rights, as well as their rights under the Utah Constitution.

Defendants have moved to dismiss the entire complaint, contending that even if the court takes Plaintiffs' allegations as true, Plaintiffs have failed to state a claim upon which relief may be granted. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## FACTS[1]

Plaintiff Canary Garden, Inc. is a non-profit corporation formed to provide grief support to families whose members have died. Canary Garden facilitates peer-to-peer grief support moderated by a group leader who lectures and instructs the support groups. Plaintiff Nancy Boldt is the executive director.

In 2016, Ms. Boldt and Canary Garden established "Joshy's House of Hope" in the city of American Fork, Utah. They leased a house in the city (the Property) in July 2016, where they moved Canary Garden's operations. They installed banners and other signs on the Property announcing they were using the house as a business.

For two years, Plaintiffs operated without incident. But in 2018, Ms. Boldt and Canary Garden experienced problems with American Fork police officer Jay Christensen and City officials. Those interactions resulted in misdemeanor charges against Ms. Boldt (ultimately dismissed) and Canary Garden's loss of its ability to offer grief counseling at the Property without legal repercussions that Plaintiffs say are unjustified.

[1] When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take all well-pled facts as true and construe them in a light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**Business License Issues**

Their troubles began on September 21, 2018, when Officer Christensen spoke to Ms. Boldt's son, Aaron Boldt, who was doing yard work at the Property in preparation for a fundraiser. The American Fork Police Department offices, as well as the City's offices, were located on the same block as the Property. Given that proximity to the Canary Garden business, as well as signs at the Property, Officer Christensen likely understood the general nature of Plaintiffs' activities.

Officer Christensen asked Mr. Boldt about Canary Garden's plans. Mr. Boldt told Officer Christensen about Canary Garden and explained that Canary Garden wanted to add group support and suicide prevention training to members of the LGBTQ+ community.

The next day, both Ms. Boldt and her son were outside the house when Officer Christensen "creeped by the Property" in a police car. He then "sped off" after spotting Ms. Boldt and her son in the yard. (Compl. ¶ 39, ECF No. 2.)

Two days later, Officer Christensen called Ms. Boldt and asked why Canary Garden did not have a business license. Ms. Boldt told him Canary Garden did not need a business license because it was a non-profit organization. One hour later, he called Ms. Boldt back and ordered Canary Garden to cease and desist holding meetings at the house because Canary Garden was operating without a license.

Canary Garden complied with the cease-and-desist order and has not operated at the Property since. As a result, Canary Garden lost valuable corporate partners and has not been able to raise money or provide services to the community. Plaintiffs assert that Officer Christensen placed them under heightened scrutiny and harassed them because Canary Garden was planning to provide additional services to the LGBTQ+ community.

**Criminal Citation of Ms. Boldt**

After Canary Garden stopped operating, Officer Christensen showed up at the house of Ms. Boldt's daughter. While the daughter was playing with her children in the yard, Officer Christensen approached them with his hand on his gun and asked where he could find Ms. Boldt. According to Plaintiffs, Officer Christensen already knew how to contact Ms. Boldt and his visit to Ms. Boldt's daughter was really an attempt to intimidate Ms. Boldt and her family.

On October 9, 2018, one day after Officer Christensen spoke to Ms. Boldt's daughter, he met Ms. Boldt in the parking lot next to Joshy's House of Hope and once again raised the issue about operating Canary Garden without a license.

Ms. Boldt explained that everyone with whom she interacted at the City told her Canary Garden could operate without a business license. Officer Christensen ignored Ms. Boldt's explanation and told her she was facing a year in jail for operating a business without a license. Then, despite Canary Garden's compliance with the cease-and-desist order, Officer Christensen cited Ms. Boldt with a Class B misdemeanor. She alleges his conduct "was motivated by and/or condoned by municipal policy or a practice of selective and/or malicious enforcement of the City's municipal ordinances." (Id. ¶ 85.)

**American Fork's Prosecution of Ms. Boldt**

Based on Officer Christensen's criminal citation, the City filed a Criminal Information against Ms. Boldt in state court for operating a business without a license, a Class B misdemeanor in violation of American Fork Municipal Code section 5.04.020. That section provides, "It is unlawful for any person to engage in business in the city without first procuring

the required license therefor."

Importantly, the Municipal Code contains an exception to that requirement:

> No license fee or permit shall be required under the terms of this chapter for the conducting of lectures, entertainments, concerts, fairs, exhibitions, bazaars, luncheons, dinners or dances which are conducted, given or made by or for governmental entities or tax-exempt charitable organizations wholly for benevolent or charitable purposes. With respect to exemptions from business license requirements claimed hereunder, it shall be the burden of the person or entity claiming the exemption to establish that exemption.

American Fork Municipal Code § 5.04.040 (emphasis added). Ms. Boldt asserts here, as she did to the City, that Canary Garden qualifies for the exemption and so does not need a business license to operate.

Given that language, as well as Ms. Boldt's explanations to Officer Christensen and the City's attorneys, Plaintiffs contend that Defendants initiated the criminal proceeding without probable cause for the purpose of harassment, discrimination, and harm to Plaintiffs because they planned to provide services to the LGBTQ+ community.

After a law firm entered an appearance in defense of Ms. Boldt, Plaintiffs say Officer Christensen improperly continued to communicate with Ms. Boldt during the criminal prosecution. Ms. Boldt claims his contact rose to the level of harassment. Her attorneys wrote to the City prosecutor, demanding that "Officer Christensen's threatening behavior … cease immediately," and telling the City prosecutor they might have to contact the court to address "attempted tampering with a witness … or for official misconduct." (Compl. ¶¶ 114–15.)

Two days after that communication, the City prosecutor moved to dismiss the charges on the basis that Ms. Boldt was "no longer operating a business without a license in American Fork City." (Id. ¶ 116.) The judge dismissed the charges with prejudice.

**Post-Prosecution**

Five days later, Ms. Boldt's husband spoke to American Fork City's business licensing

supervisor, explaining that Canary Garden did not need a license because as a charitable organization, it was exempt from the municipal code licensing requirement. The supervisor, after consulting with the City attorney, told Mr. Boldt that Canary Garden did need a business license to operate. The City rejected Plaintiffs' subsequent official request for authorization to resume operations. According to Plaintiffs, the City attorney misquoted and misapplied Municipal Code § 5.04.040.

The City later offered a reason for the denial: building safety. But the City had not issued a notice about safety concerns at the Property or given Plaintiffs the chance to rectify those concerns. Moreover, the purported safety concerns directly contradicted the 2016 findings of the City's Chief Building Inspector and fire marshal, who concluded the Property was safe to use. Plaintiffs contend that the building safety explanation was pretext to cover up the retaliatory motive.

Since Officer Christensen's cease and desist order, Canary Garden has not operated. This, Plaintiffs say, devastated them financially,[2] and "wrongfully and unreasonably interfered with Ms. Boldt and/or Canary Garden's possessory interest in and use of Joshy's House of Hope." (Id. ¶ 135.)

## ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[2] As part of the financial fallout, Canary Garden was not able to pay its lease obligations. Consequently, Canary Garden's landlord sued Ms. Boldt to recover unpaid rent and obtained a $60,000 judgment. The judgment, Ms. Boldt alleges, was a direct result of Officer Christensen's and the City's actions, which "devastated [her] financially" and caused "extreme amounts of anxiety and emotional distress[.]" (Compl. ¶ 141.)

Defendants, who contend Plaintiffs have failed to satisfy this notice pleading requirement, have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

When reviewing Defendants' Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to Plaintiffs. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid dismissal, a plaintiff must state a facially plausible claim containing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

**B. § 1983 Claims**

Section 1983 provides that an individual acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In limited circumstances, a municipality may be liable as well.

Here, both Ms. Boldt and Canary Garden contend that Defendants' actions deprived them of rights protected by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

**1. American Fork Police Department**

To begin, the court finds that Plaintiffs' claims against the American Fork Police Department, which is a branch of American Fork City, are redundant. See Martinez v. Winner,

771 F.2d 424, 444 (10th Cir. 1985) (dismissing claims against the Denver city police department because it was "not a separate suable entity" and the § 1983 claims were duplicative of claims against the City and County of Denver). Accordingly, the court dismisses the American Fork Police Department from the suit.

**2. Malicious Prosecution Under the Fourth and Fourteenth Amendments**

In Plaintiffs' first and third claims, they allege malicious prosecution under the Fourth and Fourteenth Amendments respectively. Plaintiffs have not stated a claim upon which relief may be granted under either constitutional amendment because, as Plaintiffs have essentially conceded, Tenth Circuit precedent bars their claims as a matter of law.

To begin, the court dismisses Plaintiffs' third cause of action in which they bring a malicious prosecution claim under the Fourteenth Amendment. A plaintiff may only pursue a malicious prosecution claim under the Fourth Amendment. Albright v. Oliver, 510 U.S. 266, 271 (1994).

As for Plaintiffs' first cause of action, in which they assert a malicious prosecution claim under the Fourth Amendment, Plaintiffs' allegations do not satisfy the elements necessary to prevail on a § 1983 claim for malicious prosecution. To properly state a claim, Plaintiffs must allege facts showing that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Margheim v. Buljko, 855 F.3d 1077, 1082 (10th Cir. 2017). Because such a claim arises under the Fourth Amendment, "a plaintiff must prove that he was also seized in order to prevail." Nielander v. Bd. of Cty. Comm'rs of the Cty. of Republic, Kan., 582 F.3d 1155, 1165 (10th Cir. 2009).

Ms. Boldt alleges the City seized her "when she was cited because she was under constant police surveillance and had set court dates she had to comply with." (Compl. ¶ 147.) At most, she alleges facts establishing a non-custodial seizure, and the Tenth Circuit has not recognized a malicious prosecution cause of action for injuries arising out of a non-custodial seizure. "In our cases analyzing malicious prosecution under § 1983, we have always proceeded based on a seizure by the state—arrest or imprisonment." Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007).

Plaintiffs acknowledge that recognition of their claim would extend Tenth Circuit law. Still, they cite to the concurring opinion of Justice Ginsburg in Albright to suggest the court should recognize liability when criminal charges are accompanied by non-custodial restraints on liberty. But the Tenth Circuit has "declined to accept Justice Ginsburg's invitation to expand Fourth Amendment liability in cases where the plaintiff has not been arrested or incarcerated." Id. at 916. Because the circuit court of appeals has expressly rejected expansion of a malicious prosecution claim to encompass a non-custodial seizure, the court dismisses Plaintiffs' first cause of action.[3]

**3. Retaliatory Prosecution Under the First Amendment**

In the second cause of action, Ms. Boldt alleges retaliatory prosecution in violation of her First Amendment rights. To prevail, Ms. Boldt must establish that she was engaged in a constitutionally protected activity, that Defendants' actions caused "an injury that would chill a

[3] Defendants seek dismissal of Plaintiffs' malicious prosecution claim against the City on the alternative ground that Plaintiffs have not alleged facts to support municipal liability under § 1983. The court need not reach that issue because Plaintiffs have not alleged violation of a constitutional right in their claim for malicious prosecution. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993).

person of ordinary firmness from continuing to engage in that activity," and that Defendants' actions were "substantially motivated as a response to [her] exercise of [her] First Amendment speech rights." Id. at 925. She must also allege that the City prosecuted her without probable cause. Id.

The court first notes that the City did not prosecute Canary Garden. Accordingly, Canary Garden has not stated a claim for retaliatory prosecution.

As for Ms. Boldt, she alleges that she and Canary Garden "intended to engage in the constitutionally protected activity of associating with the LGBTQ+ community and providing LGBTQ+ support services and suicide prevention training." (Compl. ¶ 156.) She further alleges, "Defendants were prosecuting her because of her affiliation with and plan to offer support services to the LGBTQ+ community." (Id. ¶ 157.) The purpose of Defendants' actions, Plaintiffs say, was to "prevent her from holding future LGBTQ+ group meetings." (Id. ¶ 159.)

Defendants contend that Plaintiffs' stated intention to associate with the LGBTQ+ community and plan to provide support services to that community[4] in the future means Ms. Boldt was not engaged in a constitutionally protected activity at the time Officer Christensen issued the citation.

In her defense, Ms. Boldt points to the United States Supreme Court's decision in Heffernan v. City of Paterson, New Jersey. In Heffernan, the Court held that a police officer's supervisors violated his free speech rights when they demoted him based on their mistaken belief that he was engaging in protected political activity.

> We conclude that … the government's reason for demoting Heffernan is what counts here. When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment

[4] Defendants assume for purposes of their motion that associating with and providing services to the LGBTQ+ community are constitutionally protected activities.

> protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if, as here, the employee makes a factual mistake about the employee's behavior.

136 S. Ct. 1412, 1418 (2016). Ms. Boldt emphasizes the Heffernan court's focus on the government actor's intention.

> We note that a rule of law finding liability in these circumstances tracks the language of the First Amendment more closely than would a contrary rule. Unlike, say, the Fourth Amendment, which begins by speaking of the "right of the people to be secure in their persons, houses, papers, and effects …," the First Amendment begins by focusing upon the activity of the Government. It says that "Congress shall make no law … abridging the freedom of speech." The Government acted upon a constitutionally harmful policy whether Heffernan did or did not in fact engage in political activity. That which standards for a "law" of "Congress," namely the police department's reason for taking action, "abridge[s]" the freedom of speech" of employees aware of the policy. And Heffernan was directly harmed, namely, demoted, through application of that policy.

Id. at 1418–19 (emphasis added).

Defendants respond that there was no mistaken belief in this case. "There are no allegations that Defendants ever thought Plaintiffs were engaged in a constitutionally protected activity. Only that there were future plans to do so." (Defs.' Reply Mem. at 3, ECF No. 24.) They also note that Plaintiffs do not bring a prior restraint claim. "A prior restraint claim is distinct from a retaliation claim because it is based on a restriction that chills potential speech before it happens, rather than an adverse action taken in response to actual speech." Brammer-Hoelter v. Twin Peaks Charter Academy, 602 F.3d 1175, 1182 (10th Cir. 2010) (internal citations and quotation marks omitted).

Plaintiffs complain about government action taken to prevent future speech. But they have not cited any case supporting their position that a retaliatory prosecution claim may be based on actions preventing future speech. Accordingly, the court dismisses Plaintiffs' third cause of action.

**4. Seizure of Property under the Fourth Amendment**

In their fourth cause of action, Plaintiffs allege Defendants violated their Fourth Amendment right to be free from unreasonable seizures of their property. They contend the Defendants have unreasonably deprived them of the ability to provide Canary Garden's services at Joshy's House of Hope when the City prohibited operation without a business license and cited unwarranted building safety concerns. This, they say, amounted to an unconstitutional deprivation of their use and enjoyment of their possessory interest in the leased Property.

Although Plaintiffs have alleged a possessory interest in the Property (through their lease), they have not stated a claim under the Fourth Amendment because they have not alleged a seizure of that interest. Property is "seized" when "'there is some meaningful interference with an individual's possessory interests in that property,'" even if that seizure is temporary. Soldal v. Cook Cty., Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

Prohibiting Plaintiffs' ability to use the leased property for their intended purpose did not dispossess them of their right to be physically on the property. Because Defendants' actions did not deny access to the Property, there was no meaningful interference with Plaintiffs' possessory interest. See, e.g., Dalewood Holding LLC v. City of Baldwin Park, 859 F. App'x 62, 64 (9th Cir. 2021) (holding plaintiff did not allege seizure under the Fourth Amendment because city's threat to illegally seize real property was not meaningful interference with plaintiff's interest when plaintiff remained "in legal and physical possession of the property"); Nikolas v. City of Omaha, 605 F.3d 539, 547 (8th Cir. 2010) (holding no Fourth Amendment seizure occurred when city placed placard on dilapidated building giving notice of proposed condemnation and removal of structure); Farwell v. City of Jacksonville, No. 3:20-cv-523-MMH-PDB, 2021 WL

928524, at *6 (M.D. Fla. Mar. 11, 2021) (holding that city's requirement that property owner obtain a permit before using the property as a daycare center was not a seizure: "The Court finds no authority to support a conclusion that requiring a property owner to meet building, zoning, or fire codes before the property can be voluntarily used as desired by the owner amounts to a 'meaningful interference' with a person's 'possessory interests'"); Marcavage v. Borough of Landsdowne, Pa., 826 F. Supp. 2d 732, 746–47 (E.D. Pa. 2011) (finding no Fourth Amendment seizure when city posted notice that owner would be violating city code if he collected rent, used, or occupied his property before obtaining a rental license); Enclave Arlington Assocs., Ltd. P'ship v. City of Arlington, Tex., 669 F. Supp. 2d 735, 742–43 (N.D. Tex. 2009) (rejecting Fourth Amendment claim of apartment complex owner who complained that highly-disruptive and inconvenient closure of streets during nearby football stadium events constituted seizure, and holding that interference with his and his tenants' "use and enjoyment" of the property was not a "meaningful interference with possessory interests").

Plaintiffs do not cite any authority to the contrary. Accordingly, the court dismisses this claim.

**5. Deprivation of Property Without Due Process Under the Fourteenth Amendment**

Defendants treat Plaintiffs' fifth cause of action as a substantive due process claim based on a noncustodial seizure of Ms. Boldt. Citing to the standard applicable to substantive due process claims, Defendants contend Plaintiffs have not stated a claim because they have not shown "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Becker, 494 F.3d at 922–23.

Plaintiffs say Defendants misconstrue the nature of Plaintiffs' claims because "they assume the only 'seizure' involved is the seizure of Ms. Boldt's person." (Defs.' Mot. to

Dismiss at 8, ECF NO. 10.) Plaintiffs' due process claim concerns Defendants' unreasonable interference with Plaintiffs' property. Consequently, say Plaintiffs, Defendants' citations to substantive due process cases concerning prosecution without probable cause for their analyses of personal seizure are inapposite.

Because Defendants limited their analysis to the criminal citation and prosecution of Ms. Boldt, the court denies their motion to dismiss this claim.

**6. Equal Protection Under the Fourteenth Amendment**

In their sixth cause of action, Plaintiffs bring a "class of one" equal protection claim under the Fourteenth Amendment. "The paradigmatic 'class of one case, [ ] sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.'" Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting Lauth v. McCollum, 424 F.3d 631, 633 (7th Cir. 2005)) (alteration in original).

The United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). But courts "have approached class-of-one claims with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'" Kansas Penn, 656 F.3d at 1216 (quoting Jicarilla Apache Nation v. Rio Arriba Cty., 440 F.3d 1202, 1209 (10th Cir. 2006)). The Tenth Circuit identified "risks [that a class-of-one] claim could pose to ordinary government decision-making," concerns which "are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion." Id.

Given those concerns, courts have imposed a strict standard that narrows a plaintiff's ability to prevail on a class-of-one claim. See, e.g., Jicarilla, 440 F.3d at 1212 ("The requirement that a plaintiff show that similarly situated persons were treated differently is especially important in class-of-one cases.") (quotation omitted); Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004) ("It is [ ] imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class."); Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007) ("This requirement demands more than lip service. It is meant to be a very significant burden.") (quotation omitted); Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."); Scocca v. Smith, No. C-11-1318EMC, 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012) ("[T]here is a high premium for a plaintiff to identify how he or she is similarly situated to others.").

To sufficiently state a class-of-one claim, a plaintiff must allege that others "similarly situated in every material respect were treated differently [and that] this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." Kansas Penn, 656 F.3d at 1216 (internal citations and quotation marks omitted). Here, Plaintiffs allege upon information and belief that "other similarly situated nonprofit organizations in the City have not been instructed or ordered to cease operations, nor have their principals been criminally prosecuted for failing to maintain a business license despite being exempt from that requirement." (Compl. ¶ 185.)

Defendants contend this allegation is nothing more than "a generic recital of the element of the claim for violation of the Unequal [sic] Protection clause." (Defs.' Reply Mem. at 6.)

And with no specific facts of disparate treatment, say Defendants, Plaintiffs have not adequately alleged a class-of-one equal protection claim.

In Kansas Penn, the Tenth Circuit held that a party's class-of-one claim did not satisfy the pleadings standards of Twombly and Iqbal because the plaintiff failed "to set out specific examples of similarly situated individuals and differing treatment[.]" Kansas Penn, 656 F.3d at 1219 (emphasis added). See also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (decided in wake of Twombly/Iqbal and Olech and dismissing class-of-one claim for failure to allege specific examples of differing treatment of similarly situated individuals) (cited with approval in Kansas Penn, 656 F.3d at 1219); Glover v. Mabrey, 384 F. App'x 763, 777–78 (10th Cir. 2010) (dismissing claim because plaintiff "failed to allege, as it must, the identity or characteristics of other similarly situated contractors and how those similarly situated contractors were treated differently").

In their opposition, Plaintiffs rely on their "information and belief" allegation and the text of the municipal code exempting "tax-exempt charitable organizations" entities from the requirement that they obtain a business license for certain purposes. But Plaintiffs do not specifically identify any similarly situated entities or describe City decisions showing the City treated those entities differently. That does not satisfy the pleading standards the Tenth Circuit has articulated for class-of-one claims.

Plaintiffs' pleading of their equal protection claim is even more problematic because they allege the similarly situated element purely on information and belief. See James v. Granger, No. 1:13-cv-0983 AWI SKO, 2014 WL 2208084, at *2 (E.D. Cal. May 28, 2014) ("Alleging on information and belief that other unnamed individuals received opposite treatment is alone not enough to state a plausible claim for relief under a class-of-one Equal Protection theory."); Solis

v. City of Fresno, No. 1:11-cv-00053 AWI GSA, 2021 WL 868681, at *9 (E.D. Cal. Mar. 13, 2012) (dismissing claim because complaint alleged "on information and belief" and did not "identify sufficient facts to determine whether the unnamed individuals were prima facie identical to Plaintiff in all relevant aspects.").

Because Plaintiffs have not sufficiently alleged the existence of similarly situated entities, the court dismisses Plaintiffs' sixth cause of action without prejudice.[5] If Plaintiffs are able to plead differential treatment of similarly situated entities on something more than information and belief, they may file a motion to amend their complaint.

## C. Utah State Constitution Claims

Plaintiffs bring five claims under the Utah State Constitution. In the Complaint, they list the first four—Malicious Prosecution, Retaliatory Prosecution, Unreasonable Seizure, and Violations of the Due Process Clause—without linking them to specific clauses of the Utah Constitution. They do link their final state constitutional claim to "Violations of the Article I section 24 of the Utah Constitution" (the State's equal protection clause).

### 1. Malicious Prosecution Under the Utah Constitution

In the Complaint, Plaintiffs did not identify the section of the Utah Constitution upon which they rely to assert their seventh cause of action. Given that vagueness, Defendants interpreted the claim to mirror Plaintiffs' claim for malicious prosecution under the federal

[5] Defendants also move to dismiss the equal protection claim against the City because "Plaintiffs' Complaint does not allege that the conduct of Defendant Officer Christensen was authorized by official municipal policy." (Defs.' Mot. to Dismiss at 10.) Because the court holds Plaintiffs have not stated a cause of action for violation of their equal protection rights, the court need not address Defendants' alternative basis for dismissing the City. As noted earlier, absent violation of a constitutional right, a municipality may not be held liable under § 1983. Hinton, 997 F.2d at 782.

constitution.

In their opposition, Plaintiffs somewhat clarified that they focus on loss of their property rights rather than harm from a noncustodial seizure of Ms. Boldt. Apparently, they interpret property rights to encompass not only the house but also their business license. (See Pls.' Mem. in Opp'n at 18, ECF No. 20 (citing cases recognizing possessory interests and a right to operate a business).) They also indirectly cite to the Utah Constitution's due process clause, Article I, Section 1. (See id. (citing case that cites to Utah Constitution Article I, Section 1).) But they do not explain why that section encompasses a claim for malicious prosecution. And if they mean to bring their claim under a different section of the Utah Constitution, they have not indicated which one. Because they have not clearly identified the legal basis for their claim or sufficiently articulated the legal theory on which they proceed, the court dismisses this claim without prejudice. Plaintiffs may file a motion for leave to amend with a clarification of the legal basis for their malicious prosecution claim under the Utah Constitution.

**2. Retaliatory Prosecution Claim Under the Utah Constitution**

In their eighth cause of action, Plaintiffs assert retaliatory prosecution without identifying which provision of the Utah Constitution creates such a claim. Defendants move for dismissal, asserting that "it does not appear that Utah recognizes a claim for retaliatory prosecution under its Constitution." (Defs.' Mot. to Dismiss at 11.)

Plaintiffs, in their opposition brief, do not clarify the textual or legal basis for their claim. Although they say they base this cause of action on a self-executing provision of the Utah Constitution, they do not identify which clause. Instead, they generally cite to three provisions and assert that their retaliatory prosecution claim, as well as two other claims, are based on this

group of provisions[6] "and are therefore cognizable." (Pls.' Mem. in Opp'n at 16.) They do not provide anything more.

Because Plaintiffs have not clearly identified the legal basis for their claim or sufficiently articulated the legal theory on which they proceed, the court dismisses this claim without prejudice. Plaintiffs may file a motion for leave to amend with a clarification of the legal basis for their retaliatory prosecution claim under the Utah Constitution.

**3. Unreasonable Seizure Under the Utah Constitution**

Plaintiffs contend, in their ninth cause of action, that Defendants interfered with their property rights. But, as with the claims discussed above, Plaintiffs fail to cite to a particular provision of the Utah Constitution in their Complaint. Moreover, the complaint does not clearly explain the nature of those property rights.

Defendants move for dismissal on a theory of substantive due process and the alleged noncustodial seizure of Ms. Boldt. Plaintiffs clarified in their opposition brief that they seek redress for interference with their possessory interest in the house and their right to operate at the Property without a business license. After that clarification, Defendants replied that "Plaintiffs' claim for unreasonable seizure under the Utah Constitution mirrors its [sic] federal claim counterpart for loss of use and enjoyment of property.'" (Defs.' Reply Mem. at 8.) They then argue that the court should dismiss this claim for the same reasons the unreasonable seizure

---

[6] Plaintiffs cite the "due process clause" in Article I, Section 7, which provides that "No person shall be deprived of life, liberty or property, without due process of law." Plaintiffs also cite to Article I, Section 1, which addresses "Inherent and inalienable rights," including the rights to "acquire, possess and protect property," "assemble peaceably," and "communicate freely their thoughts and opinions." And Plaintiffs rely on Article I, Section 14, which protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures[.]"

claim under the Fourth Amendment fails.

Although Plaintiffs' unreasonable seizure claim appears to track their federal constitutional claim, the court will not make that assumption because Plaintiffs do not clearly articulate the textual basis for their claim or the legal theory under which they wish to proceed. And Utah courts' interpretation of analogous state constitution provisions can provide more protection than their federal counterparts. The Utah Supreme Court does "not presume that federal court interpretations of federal Constitutional provisions control the meaning of identical provisions in the Utah Constitution. In fact, we have not hesitated to interpret the provisions of the Utah Constitution to provide more expansive protections than similar federal provisions where appropriate." State v. Briggs, 199 P.3d 935, 942 (Utah 2008) (citing State v. Tiedemann, 162 P.3d 1106, 1114 (Utah 2007)).

Given the uncertainty and the possibility that the Utah Constitution's protections may exceed the federal constitution's protections in this situation, the court dismisses the claim without prejudice. Plaintiffs may file a motion for leave to amend their claim adequately explaining the nature of their claim for unreasonable seizure under the Utah Constitution.

**4. Violation of Due Process Under the Utah Constitution**

Defendants contend the court must dismiss the tenth cause of action because Plaintiffs have not alleged interference with their possessory interest in the Property. But Utah courts have held the Utah Constitution's due process clause protects the licensing of a business. See Dairy Prod. Servs., Inc. v. City of Wellsville, 13 P.3d 581, 592 (Utah 2000) ("Inasmuch as the licensing of a business represents a property interest, it should not be disrupted 'without following fundamental standards of due process of law.'") (quoting Anderson v. Utah Cty. Bd. of Cty. Comm'rs, 589 P.2d 1214, 1216 (Utah 1979)). Plaintiffs allege that Defendants interfered

with their right to operate Joshy's House of Hope without a license. Because their claim is not based purely on their possessory interest (as demonstrated by their reliance on Dairy Product Services), the court declines to dismiss the tenth cause of action.

**5. Violation of the Utah Constitution's Uniform Operation Clause**

Plaintiffs expressly identify the textual basis for their eleventh claim: Article I, Section 24 of the Utah Constitution. Called the Uniform Operation Clause, this provision is essentially the State of Utah's analogue to the Equal Protection Clause in the United States Constitution.[7] Horton v. Utah State Retirement Bd., 842 P.2d 928, 933 n.3 (Utah Ct. App. 1992) ("[A]rticle 1, section 24 of the Utah Constitution … is the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution.") (citing Malan v. Lewis, 693 P.2d 661, 670 (Utah 1984)).

Recently, a Utah Court of Appeals addressed a party's assertion of a class-of-one theory of liability under that clause. See Salt Lake City Corp. v. Haik, 438 P.3d 913 (Utah Ct. App. 2019).[8] The court in Haik relied on a case addressing a class-of-one equal protection claim under the Fourteenth Amendment of the United States Constitution to articulate the elements of a class-of-one claim under the Utah Constitution. See id. at 926–27 (citing Brian High Dev., LC v. Brian Head Town, 348 P.3d 1209, 1212 (Utah Ct. App. 2015)).

Accordingly, the court applies the same analysis used to address Plaintiffs' Fourteenth Amendment Equal Protection Clause claim. See Malan, 693 P.2d at 670 ("Case law developed

[7] The state constitution's Uniform Operation Clause "is at least as exacting as its federal counterpart … and may, in some circumstances be more rigorous than the standard applied under the federal constitution." State v. Drej, 233 P.3d 476, 486 (Utah 2010) (internal citation and quotation marks omitted).

[8] In 2020, the Utah Supreme Court affirmed the appellate court's ruling on an unrelated issue. See Salt Lake City Corp. v. Haik, 466 P.3d 178 (Utah 2020) (addressing whether lower court properly interpreted Article XI, Section 5 of the Utah Constitution).

under the Fourteenth Amendment may be persuasive in applying Article I, § 24[.]"). For the reasons articulated above (namely, that Plaintiffs have not adequately pleaded the "similarly situated" element of their claim), the court dismisses Plaintiffs' class-of-one equal protection claim under the Utah Constitution without prejudice.

**ORDER**

For the foregoing reasons, Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint (ECF No. 10) is GRANTED IN PART AND DENIED IN PART as follows:

1. The court dismisses all claims against American Fork Police Department.
2. The court dismisses the first, second, third, and fourth claims with prejudice.
3. The court dismisses the sixth, seventh, eighth, ninth and eleventh claims without prejudice. Plaintiffs may file a motion seeking leave to amend those claims no later than January 14, 2022.
4. The court denies Defendants' motion to dismiss the fifth and tenth claims.

DATED this 2nd day of December, 2021.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
U.S. District Court Judge